The next case is Kenney v. Fruit of the Earth. When you're ready, Counsel. Good morning. May it please the Court, Glenn Danis for Plaintiff Kenney. So the District Court's order here and judgment should be reversed for several reasons on its finding that there was no standing to seek injunctive relief. Number one, there was sufficient evidence here to show that Davidson, this Court's precedent in Davidson, was satisfied. Number two, the ingredient list here is no defense. It would not have mattered if Ms. Kenney had looked at the ingredient list. And this was something, this was essentially the only piece of evidence that the Court actually cited from the deposition testimony. Well, we're talking about the future, right, because this is injunctive relief. If Ms. Kenney had testified in her deposition that, oh, now that I see that there's an active chemical ingredient in this thing, I would never be fooled again, she would not have standing to seek injunctive relief, would she? Correct. That's correct. So it's because she testified that I might, I'd make this same problem again. Yeah, I think that. And I'm inclined to think you may be right that that gets you past summary judgment, but this is a case before, you don't get a jury in this case because you're only seeking injunctive relief. You really want to go back to the same judge and ask him whether he believes her? Can he find as a matter of fact that he doesn't believe her testimony? And then you lose. Yeah, Your Honor is correct, and I think that that's right. What I, I don't, I didn't take it to mean, or the District Court's order to mean, that he didn't believe her necessarily. I took it to mean that he was kind of faulting her for not having looked at the back. Right, and we have a case that says alleging that the back doesn't fix the problem is enough, and I think it probably follows that if somebody says what the allegation was in their deposition and swears to it, that's enough to get past summary judgment. But you do agree with me that if we send it back, the trier of fact will be the judge. Yeah, we do. And he can decide that she doesn't face any problem. I think that's right, Your Honor, and we would be happy. But hasn't he done that already? That's my question. Hasn't he done that already by saying that, well, if you look at it, you can tell, right? Fooled once, now you've learned the lesson, and you're not going to be fooled again. So he's already engaging in that weighing analysis. Yeah, I think that that's right, but I think that's where this court comes in. So what I would ask the court is to, on remand, to suggest that, you know, if the district court's rationale were that she's wrong and she has no standing because she didn't look at the back, that as a matter of law, that that's insufficient. That would be insufficient under Williams v. Gerber. I don't think the case law stands for any blanket proposition. It's still, like, fact-specific. And on these facts, she made—she declared that reading it she couldn't tell. The district court's like, well, it's a zinc-only issue. You can tell. So therefore, there's no standing. I'm not sure remand—what are we remanding to do? Well, I think it would be a remand to say if the district court's ruling was that, you know, she lacked standing because she didn't—she lacked diligence, that she didn't take the step of turning the package around, that that's inconsistent with this court's law. It's inconsistent with Gerber. It's inconsistent with Whiteside, a published decision just from this summer, which, again, clarified the issue that consumers—the onus is not on the consumer to turn the package around and inspect the fine print when there's a, you know, front-of-the-label, clear— It's a little bit different. Everybody agrees she's now, even though not back then, she's not suing for damages anymore. She's just suing for injunctive relief, that she's now seen the back of the package. It was shown to her in the deposition. And it said, see, it says there's an active chemical ingredient here. Would that affect your decision to buy this in the future? And she says no. And it's pretty clear to me the judge doesn't buy that. And so your legal theory may be correct, but what additional evidence would be in front of the judge on remand that might lead him to a different conclusion than the one he reached this time? Sure. Well, one, you know, I think rather important and compelling piece of evidence would be the survey evidence. There was a survey here that was submitted that the district court did not touch at all, which showed that her, that the way she behaved was not idiosyncratic in any way. The way she behaved in the past, the question that's now, this case now is a different case than the way it started. The case is now limited to the question of whether or not your single client would be fooled again in the future, in effect, by the label Clear Zinc on the front. And we now know that she knows something she didn't know in the past. She now knows there's something under your name. Well, but her, your Honor, respectfully, her testimony was not, was exactly not, yes, now I understand. Now I know. I agree. And that may get you past summary judgment. I mean, I don't know. But, I mean, Judge Wynn said in the last case, this may be a really weak case that deserves to survive summary judgment. You may have a really weak case that deserves to survive summary judgment too. But my difficulty in this case is that the ultimate finder of fact is the judge. And he's entitled to find jurisdictional facts, even if they're intertwined with the merits based on the record. And so hasn't he already, I guess my question is, hasn't he already found that your client doesn't really suffer an injury, doesn't suffer the possibility of an injury in the future from this mislabeling? Again, I don't think that the judge has found that as a factual issue. The judge said nothing in his order, I'm sorry, in her order regarding. I'm sorry. I did the same thing. The judge said nothing in her order regarding credibility or belief or the fact that he thinks that now really she, even though she says otherwise, she really wouldn't be fooled in the future. The judge's, the court's, the district court's only statement regarding the actual evidence was that she didn't look at the back. But counsel, the whole, excuse me, I didn't mean to interrupt you. The whole basis of your complaint is that she now knows she was duped, okay? Now, how can she possibly say going back that she would be duped again? Is that it? Does she have this, one of these mental conditions where she now forgets everything that she knew before and she has to look at it anew? This is like Groundhog Day for sunscreen? Yeah, well, Your Honor, I would point to the Gasser case that we cited in our briefing, Gasser v. Kiss My Face. It talks about the fact that for purposes of determining standing to seek injunctive relief under California's consumer protection statutes, companies that are using complicated chemicals often substitute one for another. It could be that now they're using octycrylene and it could be in the future they're using octybenzene. Well, Your Honor, we have to decide this case on the record, not on some speculation as to what they might do in the future. But, Your Honor, I think that this is high- There's no evidence that they've changed their formula in the record that I know of. The inquiry here is by definition a speculative one. What we're asking is whether in some hypothetical future time she might be fooled. It isn't speculative because she already knows what the ingredients are because your whole suit is based on what the ingredients are versus what you claim the front package implied. So, I mean, I'm right where Judge Hurwitz is. I'm having a very hard time figuring out where you're going from here. Well, Your Honor, where we're going from here is to seek- to try and seek an injunction that makes either the defendant change the formula of its product or have truthful advertising. But when you get down to the district court, you have to show that your single client would be harmed or you don't get an injunction. And she can't show that, to my knowledge, from the record because she doesn't have a blank slate to work with. She is operating with the knowledge that this product, with this labeling just as it stands because that's what's before us, is, in her view, incorrect. So she isn't going to go- I mean, unless somewhere in the record she says, well, I'm just going to go back in there and buy it again just exactly the way it is because I want to buy it again and I want to maybe file another lawsuit. I don't know. I mean, just having a hard time with this. Well, I take Your Honor's point, and I think that here there is record evidence that she would like to buy the product again and would buy the product again if she could be sure that what she was buying didn't have chemical UV filters in it. Let me ask you, this case is strange procedurally because you've dropped all your class allegations. You've dropped all your damage allegations. And Davidson, what Judge Berzon wrote in the case, and it seemed to make sense to me, is you can't let the case get mooted out by the fact that the named plaintiff was fooled because the rest of the class is still out there. And so as long as the named plaintiff makes an allegation that I might be fooled again in the future, we're going to keep these alive because otherwise the consumer protection notion of these statutes goes away. The difficulty in your case is it's just your client. And so is it believable that your client, I mean, if there are many sunscreens on the market, that your client would go buy this particular one by this particular manufacturer once having brought a lawsuit saying I was fooled into buying it because it was mislabeled? That's, I mean, I'm having difficulty believing that as a matter of fact even though she says it. I understand, Your Honor. I would make two points to that. One would be, you know, as this court in Davidson noted in Lilly versus, I believe it was Lilly versus Jamba Juice, just being unsure in the future is a sufficient injury. Let me ask you this because I think we're all struggling with the same issues. Let me have you go right to the district court's analysis because the district court did grapple with Davidson and saw a distinction there because you can't tell whether the wipes are truly flushable or not until you buy them and do it. And so I'm going now to line 14 of ER 8 where the district court says, but unlike the Davidson matter, because Kenny can definitively determine whether defendant's sunscreen contains nonzinc ingredients prior to purchase, I'm paraphrasing, Kenny faces no future imminent threat of being deceived again. And she can do that by simply looking at the label. I don't see an error in that. And that's what we were talking about, like the court had already looked at her document, weighed it and said, okay, well, you got fooled once and now you're not going to get fooled again. You can just simply look at it and tell. Well, I think that, again, that comes back to this idea that the onus is on a consumer to understand the difference between mineral and chemical UV compounds, like the district court said. Well, that was before she was fooled. But now operating with full knowledge, is she going to get fooled again if she looks at the label? Well, I think she certainly might, or at least it's enough to meet the Article 3 inquiry that this court set out in Davidson to say that she'd like to but can't be sure. That's sufficient. That's where the bar is. And I just wanted to say one thing before I end to respond to Judge Hurwitz, which was that even though it's a single plaintiff case, she's seeking public injunctive relief under the UCL. Public injunctions under California's consumer protection statutes, even in a single plaintiff case with no class allegations, involve sort of public rights. They involve more than simply the rights of the named plaintiff. And that would be the California Supreme Court case in McGill v. Citibank. Would you like to save the rest of your time? I would. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court, I'm Rick Shackelford of Greenville Troward. For the appellees, I would be remiss if I did not introduce my colleague, Hannah Shanks Parkin, who's done much of the heavy lifting throughout this case and has been invaluable. The district court's order should be affirmed because, simply put, the district court got it right. With the benefit of evidence, not relying on artful pleadings, it was clear that appellant could not be fooled again by the clear zinc lotion sunscreen product at issue. That may be clear as a matter of logic, but we're dealing here with a procedural case. We're clear after Davidson that this allegation is sufficient. Which is why we didn't move to this case as the pleading stage. And so now when we get to it, it seems to me that as a matter of Rule 56 law, in Celotex, what Celotex says is, look, your allegation doesn't work. You must come forth with evidence at the summary judgment stage to show that your allegation is true. Or it creates an issue of fact. And she does. She says in her deposition, completely unbelievable to me, but I'm not a trier of fact. I'd buy it again without even knowing what I know now. So I thought, you know, there could be this problem in the future. And the judge, nonetheless, grants summary judgment. My difficulty is a procedural one, which shouldn't the judge have said, no, you get past summary judgment, but now I'm the fact finder and I don't believe you. Is this case missing a stage? I don't think so. I think you've asked a two-part question. I think the second part, couldn't she just say I'm not buying it? I agree with you. Well, I think the Ninth Circuit just recently decided, I believe, in this case, dealing with the ability to get into jurisdictional fact finding would come out my way. But I'm going to go differently. But she can't say she's not buying it at summary judgment, can she? No, and here's why. And this is what makes the case different from Davidson. Davidson said, I want a truly flushable wipe. And I can't tell by looking at the label. And you'll recall the pleading in that case. She studied the label and she still couldn't figure it out. The appellant here, Ms. Kinney, she's not in the market for my product. She wants a product that only has zinc. That's what she wants to buy. My product is not that product. And if you apply the level of scrutiny that Davidson did to the label, she would find there's something in there besides zinc. So the product that she's in the market for is zinc only. And she sees from the label that this is zinc plus something. She's not in the market for my product. So she can't say, I want to buy your product again. But she argues she would like to buy it again. She would like to buy a product that's only zinc. Well, she would like to buy the same product again, but she can't tell. And this is the part where I think the district court did engage in some determination by looking at her declarations like, well, you now know that this product is not a zinc-only product. So how could you be fooled again in the future? You know that this product is not the one you're in the market for. And it may be a subtle distinction over a $4 issue, but we make these kinds of subtle distinctions all the time. She said, I would like to buy your product if it were what I wanted. That if is a really big problem for her. I would like to buy your product if it were a different product. And there was a suggestion here that there was an aspect of injunctive relief that would require us to reformulate the product. Well, the district court correctly found that there's no legal obligation that the district court could impose for us to reformulate the product. So you can't have an injunction that requires us to make a product that she would like to buy. It's a different product. And that's where I get at the summary judgment issue. I don't think the district court necessarily resolved credibility issues. I certainly think you could view it that way. And Judge Hurwitz, I completely agree with you that if it were to go back, it's a very short proceeding. But I think the district court fully credited Ms. Kinney's testimony when she said, I want a zinc-only product. Well, she said more, though. She said, your side. I don't know who tried the case. She showed her the back and said, now that you know this has an active chemical ingredient, you wouldn't be fooled again, would you? Words to that effect. And she said, oh, yeah, I would. I'd buy it based on the clearance. And I find that unbelievable, but this is at the summary judgment stage, not at the credibility stage. Which is it? I think the court can look at all of the facts before her at summary judgment and, again, define what is the product that you really wanted to buy. And can you tell, unlike the flushable wipes, can you tell this is not the product that you're in the market for? Well, you know, we do have doctrines that talk about, you know, we know that there has to be a genuine issue of material fact. And we have doctrines that go to the proposition that if somebody makes a fantastical claim, the court has the right to disregard that fantastical claim. Would you describe her comment that, well, yeah, I know I only want a zinc one, but I'm going to go back and I might get fooled again, even though I now know that it's not only zinc? Does that fall within that purview? I believe it does. And I think that may be why the panel is having the same kind of issue with the district court. It's like, are we really going to have a trial over this? Something that's that obvious? Because it is obvious. And I think what has been argued to your honors, especially in the briefing, is really an incorrect exposition of the law because how the appellant prevails and gets to go back to the district court is by persuading you that at summary judgment, the court wasn't able to turn the bottle around and look at the back, that you don't get the full label. What you've heard is a long exposition that, no, Williams against Gerber says, you know, you only get to look at the front. You can't take it away on the back. And what this court decided in Whiteside, which was also decided to your honors, is that Gerber and the state law corollary Brady, the one-a-day vitamins case. The front of the label may get you past the pleadings, but it doesn't serve you well at summary judgment because the fact finder gets to turn the thing around and look at the entire label, see what it says. Would it make a difference if this were a class action? See, it seems to me one of the teachings of Davidson is that you can't boot out the class action because the plaintiff has now once been fooled. And so what I'm having some difficulty with, they argue this public injunction issue, but I'm having some difficulty is that if this were really a class action, we wouldn't say, well, we have to dismiss it because the plaintiff no longer has standing because she's been fooled already. We'll have to find somebody else who won't be fooled, who already knows that it's on the back of it. The difficulty with this case, it seems to me, is that it's in this strange procedural posture. Well, and I think that's why Davidson is a poor fit because both it was a class action and it was at the pleading stage. Doesn't Davidson suggest that if the person said, if you put on evidence of what was in the pleadings at the summary judgment stage, then you would get past summary judgment? So if the plaintiff in Davidson said precisely what the pleadings said in their deposition, she would get past summary judgment, wouldn't she? Perhaps. So why is your case different? I go back to what was she in the market for? And, again, that to me is the distinction with Davidson. She wanted something that was a truly disposable wipe, and try as she might, looking at the entire label, studying it back, forward, sideways, and inside out, she had to buy the product in order to test the label claim. But she also knew at this point, she now knows after at least the pleading stage, that this product, the one she set out to buy, is not a disposable wipe. Right, and that was one of the issues. So she's never going to buy it again, is she? In Davidson, yes, because she can't tell without buying it. In this case, no, because it's not the product she's in the market for. She can tell because she did buy it and discovered it wasn't a disposable wipe. Now, at the pleading stage, I understand. That's why I'm saying you're thinking that she fails at summary judgment. That Davidson is just a pleading case, and that at summary judgment, you must do more than simply put on evidence that your pleading is accurate? Well, here was one of the problems in Davidson, and this is what, looking forward, I think the court may have gotten a little bit over its skis in saying, she can't tell, maybe the product has been changed. Well, my product's not like that. It's an over-the-counter drug. If I change the formula, I have to change the label. If I change the ingredients, I have to change the label. If I change the label or I make a different product, we have a different case. And that was, I think, what makes this so much different from Davidson, is that if the court were to say a plaintiff must apply the level of scrutiny that Davidson pled she had, I don't think this case even survives the pleadings. And I know that district courts have struggled with trying to find cases that fall on either side of the Davidson line, the can you be fooled again? Is it impossible to tell? And there are a number of decisions that have come down after Davidson's where trials courts have said, applying the impossible-to-tell standard. What does the label tell you? If the label tells you it has zinc plus octocrylene in it, then you know it's not a zinc-only product and this is not the product for you. One thing about the McGill against Citibank case, it might be a fine argument if we were in state court, but we're not. There has to be an injury. In fact, you have to have an imminent threat of future harm to you, Ms. Kinney, not to the public. So the argument about the public versus private injunction, I don't think washes in this court. I think it would be fine if we were downtown in the Reagan building arguing to a state court of appeals. But there was no error here in the district court's determination that Ms. Kinney or anyone else looking at this label to try to find out is this a zinc-only product can't be fooled again because it's plain from the label. It's zinc plus something, and that's not what you're looking for. I find myself in that rarest and most uncomfortable position for a lawyer of having time left on the clock, and I have nothing to add unless Your Honors have more questions for me. That's because you've got that time. It doesn't mean you need to use it. I'm happy to surrender it unless I can enlighten the court further. Put it in your pocket. If you're ever in front of the three of us again, remind us. Save it for next time? Thank you, Your Honor. We'll give it to you for the next case. Thank you, counsel. Just a few points in rebuttal here. So as this court, even though we are, in fact, in federal court and the court is sitting in diversity, this court in Davis did note the fact that it would gut California Consumer Protection Law, which under the UCL and CLRA injunctive relief provisions is intended for cases just like this to say that because someone was fooled, a consumer was fooled, there's therefore no future, there's no ability to seek a public injunction to actually fix the problem. I mean, this court mentioned that specifically in Davidson. The public injunction has to be predicated not on some unnamed person somewhere out in the state of California who might look at this at some point in the future, two years from now. It has to be predicated on what is in this case before this panel. Yeah, that's correct, Your Honor. And for the merits to actually get the injunction, I agree that we would have to prove up the fact that there is, in fact, deception. And to Judge Hurwitz's point earlier, I think we submitted evidence of that. We submitted survey evidence. We had deposition testimony that was consistent with it. And we would need to persuade the district court on remand that, in fact, we're entitled to an injunction because the consumers or the consuming public is likely to be misled.  On remand, you would have to persuade the district court that your client would be liable to suffer this harm. That's right. That's the consuming public at large because she has to have Article III standing on her own. And that's right. I understand you want a remand, but I'm not agreeing with your notion that on remand this turns into whether other unnamed people that might be covered by the survey. This turns into whether your client, having already brought a lawsuit because she didn't like this product, would go buy it again. Yes, that's absolutely right, Your Honor. And that's my difficulty. And I think the one that Judge Ezra raises, is that believable? I think it is, Your Honor. She didn't say… But what else is the district court going to say other than what the district court already said? When contemplating future purchases, she now knows she can simply examine the back label. Wouldn't the district court say that same thing again? It might, unless, Your Honor, we're to say on remand that we have case law in this circuit that says that front label misleading statements are not ameliorated by back label fine print clarifications. So as a matter of law, it can't be that the onus is on her in order to ferret out what the truth is about a product, particularly one that deals in complex chemical ingredients. That's simply not the law of the circuit. Well, one of the issues is that the case that you cite for that proposition was on different facts, and that's been argued. This is something we have to wrestle with. That's correct, Your Honor. In a theoretical world, you're right about that general proposition, but we're talking about this case where she's saying, okay, well, you didn't look at it, but the district court said, okay, now you go ahead and look at it. You can tell. You don't disagree with that, though, that had she looked at it, she would be able to tell now, knowing what she has, with the knowledge that she currently has, right? I do disagree with that. She said in her deposition testimony, and 75% of those surveyed said similarly, that looking at the back and the front, she does not understand that there are not chemical UV components in it or that it's not simply zinc. She did testify to that. Now, whether that's believable when probed at trial, I suppose, is a different issue. If that is true, then it would have been true for the front also, and you wouldn't even have a case. I'm sorry, Your Honor? If she looks at the back and it says zinc plus these other two chemicals, right, you're saying, well, she's going to read that and she's going to be confused, right? Your whole case is predicated on the fact that she looked at the front and that's why she was confused, because it only said zinc. But if it said zinc and the other two chemicals, then your case would be very different. It would be that the front label was misleading, but the front label wouldn't have been misleading, because if she reads the back and it says exactly the same as the front, you don't have a case. And the front and the back. Yeah, if the product didn't. I'm having a very hard time here trying to figure out how she would read the back and still be confused. If that language was on the front in readable type, would she still be confused? And your position is, yes, she would still be confused? I think she might be, as a matter of fact, still confused. But the law would not give her, the law of this circuit would not give her a remedy, because the law of this circuit would say, if it's right there on the front that it includes things other than zinc, then that's different than it being in the fine print on the back. But, counsel, I'm going to take you one step further. If you acknowledge now that she wouldn't be confused if it said it on the front, why is she confused if it says it on the back? I'm having a very hard time understanding. I mean, was one in a language that's different? Well, I mean, I think that both the case law and her testimony shows that the language of these complex chemical names is essentially a different language, that she's unable. She's already agreed that if it was on the front, she wouldn't have a lawsuit. As a matter of law, I think. As a matter of law, not as a matter of fact. I think the court might say, you may not understand. If it said on the front label, this is a zinc and octicrylene product, she may not know what octicrylene is, but the law would say it's right there on the front. We're way over, and I'm taking my colleague's time here, and, you know, we've got another case. But I'm still having a very hard time distinguishing those two situations. Thank you for your argument, counsel. Understood. Thank you very much. Thank you to both sides. The matter is submitted.
judges: NGUYEN, HURWITZ, Ezra